This is a divorce case.
Appellant, Donald P. Cain (husband), and appellee, Elizabeth G. Cain (wife), were married for twenty-five years when they were divorced in August 1980. The parties have two children, an adult daughter and a son who attained majority in February *Page 876 
1983. An agreement concerning custody of the children and division of the parties' property was incorporated into the final decree of divorce. A dispute arose over the interpretation and execution of some of the provisions of that agreement.
At the time of the divorce the parties jointly owed Federal Land Bank (FLB) and Baldwin County Savings and Loan (BCS L) a total amount approximating $98,000. The decree provided that wife was to sell the Driftwood Fishing Supply and use the proceeds to pay the parties' indebtedness to FLB and BCS L. The business had been in wife's name since 1966, and she had operated it since that time. After wife sold the business for $130,000, she paid FLB and BCS L a total of $97,915.98, leaving a remainder of $32,084.02 to be divided between the parties.
The divorce decree provided that no alimony would be paid to either party. Husband was granted reasonable visitation rights to see his then minor son. In lieu of child support, certain Social Security benefits were to go to wife and minor child. Rental property held by both parties was ordered sold with the net proceeds to be divided equally. Wife received the marital residence of the parties. A 120-acre parcel of property was divided, with wife taking forty acres and husband taking the remaining acreage. The retention of personal items was agreed upon but not specified in the decree.
On October 27, 1982, husband petitioned the Baldwin County Circuit Court to order wife to show cause why she had not paid husband monies the court ordered be paid him, had not paid FLB what the court directed her to pay, had not permitted husband to get certain personal items due him, and why wife had not transferred to husband the mineral rights granted him in the court order.
The parties reached a settlement agreement in January 1983. The final terms of the settlement were to be further clarified by a subsequent income tax accounting to be prepared by a certified public accountant. Afterwards, a final order was to be rendered by the court. In April 1983 the court entered the order. That order was subsequently set aside upon motion of the husband. Additional hearings were subsequently held and another order entered. Husband appeals.
Three issues are raised: (1) whether the trial court can construe the agreement of the parties which was incorporated into the final judgment of divorce, (2) whether the ruling regarding the division of personal property is arbitrary, capricious and against the great weight of the evidence, and (3) whether the trial court can require husband to pay child support for a child who has attained majority.
With regard to the first issue, husband contends that the trial court erred when it construed the following portion of the parties' agreement.
 "It is hereby agreed by the parties hereto that the store and the above described real property shall be placed on the market for sale as soon as reasonably possible and shall be sold for the highest obtainable market price. The proceeds from said sale shall be first used to liquidate certain indebtedness of the parties, a mortgage to the Federal Land Bank which is encumbering the residence of the parties hereto and the property on which it is located and the real property owned by the parties and located in Section 34, Township 2 South, Range 4 East, Baldwin County, Alabama and a mortgage to the Baldwin County Savings and Loan Association encumbering the Driftwood Fishing Supply and the real property on which it is situated. Any proceeds remaining from the sale of said property after the payment of the aforementioned indebtedness shall be equally divided between the parties."
The court specifically interpreted the preceding provision:
 "to permit the wife to deduct from the total sale price of the Driftwood Fishing Supply all ordinary and necessary expenses in the closing out of the business and those ordinary and necessary expenses incurred in the actual sale prior to *Page 877 
a division of the proceeds from said sale between the parties hereto."
Husband asserts that a property settlement provision of a divorce decree cannot be modified or changed, except to correct clerical errors, after a lapse of thirty days from entry of final judgment approving the settlement and cites DuValle v.DuValle, 348 So.2d 1067 (Ala.Civ.App. 1977), in support thereof. Husband contends that the agreement is clear that once the business was sold and the debts paid, the proceeds should be equally divided. Under husband's contention, the remaining proceeds from the sale of the business and payment of debts owed to FLB and BCS L totalled $32,084.02 and that his half would be $16,042.01. He states that wife gave him a check for $10,000, leaving a balance of $6,042.01 still due him.
Wife contends that it was the intent of the parties and the reasonable construction of the agreement that all costs of the sale and expenses related thereto should be first paid from the proceeds, with the net remainder divided equally.
"Divorce decrees are to be construed like other written instruments, and if there is any uncertainty, the court must construe them so as to express the intent of the parties. Such intent can be derived from the provisions of the agreement."Satterfield v. Satterfield, 419 So.2d 601, 603 (Ala.Civ.App. 1982), citing, Horsley v. Horsley, 390 So.2d 1058
(Ala.Civ.App.), cert. denied, 390 So.2d 1060 (Ala. 1980).
Ambiguity exists in this case concerning this provision, as evidenced by the disparate interpretations of the parties. In looking at the record to discern the parties' intent, the trial judge was reasonable in her determination that the true intended meaning was that the costs of winding up the business such as taxes and the expenses involved in the sale be included. On cross-examination wife testified,
 "When we wrote up the agreement, we were both present and we agreed to name these two businesses because of the large amount involved. We both knew there would be other expenses incurred and that would have to be paid at a closing of a business. Anyone has that much knowledge on those type things.
 "So, I just, well, named those two mortgages because they were so expensive in money that was the only reason we named those and did not list everything else like income tax or anything as a reasonable expense that anybody has to pay in a business. Definitely those things had to be paid out of the business and it is common knowledge."
Furthermore, evidence in the record indicates husband was familiar with the operation of the business and the various cost factors involved in the sale of a business. Husband does not deny a realization of the costs involved in the sale of a business, but, rather, argues a strict and literal reading of the provision. The court was not unreasonable or unsupported in construing the intent of the parties to include the costs of winding up and selling the business before dividing the proceeds. To interpret the provision as husband urges would be unfair and inequitable. The debts owed to FLB and BCS L were joint debts, but from the time of divorce until the sale wife paid $21,299.13 to FLB and $7,787.64 to BCS L, while husband made no payments on either note after the divorce.
Another provision of the agreement which the court construed and husband objects to is that regarding the conveyance of certain mineral rights upon sale of the rental property and the business. The provision stated that upon the sale of such property, "one-half of all oil, gas and other minerals" will be retained with each party being entitled to a "one-half interest in the one-half interest of all said minerals retained." The trial court found it necessary for wife to convey the minerals along with the sale of the rental property in order to be able to sell the property in light of the current market conditions. The husband signed the deeds which contained no reservation of mineral rights. The decision of the trial court is presumed correct and will not be disturbed unless clearly and *Page 878 
palpably wrong. Jenkins v. Jenkins, 406 So.2d 976 (Ala.Civ.App. 1981).
The second issue raised by husband regarding the court's decision with respect to the division of personal property is supported by the evidence and is not unjust, thereby warranting no further discussion. See, id. The court's decision with respect to husband's first two issues is affirmed.
The court's decision with respect to child support for the parties' son, however, is due to be reversed. "Without an agreement to the contrary, a parent is under no legal obligation to support or educate a child after it attains the age of majority." Holmes v. Holmes, 410 So.2d 115, 117
(Ala.Civ.App. 1982), citing, Ralls v. Ralls, 383 So.2d 857
(Ala.Civ.App. 1980). Thus husband being under no legal obligation to support his adult son, the question becomes whether husband is contractually obligated to support the son. Wife contends that husband is obligated because it was the intent of both parties that husband would provide child support for their son and that the agreement and husband's actions reflect such an intent.
The pertinent language of the agreement simply says, "It is agreed between the parties hereto that no child support requirements shall be placed upon the husband at this time. This agreement is made with the understanding that the wife and the minor child will receive certain Social Security payments based upon the husband's disability." A fair reading of the above language indicates that no child support payments were intended insofar as that document is concerned. Absent a contract or disability, husband is not legally responsible for the support of his adult son. Ex parte Brewington,445 So.2d 294 (Ala. 1983). Therefore, with regard to that part of the trial court's decision, we hereby reverse.
Wife is granted $500.00 as attorney fee on appeal.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
BRADLEY and HOLMES, JJ., concur.